# Supreme Court of Florida

_____

No. SC2026-1042
_____

**DOMINICK A. OCCHICONE,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

July 21, 2026

PER CURIAM.

Dominick A. Occhicone, a prisoner under sentence of death for whom a death warrant has been signed and an execution set for July 28, 2026, appeals the circuit court's order summarily denying his second successive motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.851. Occhicone also moves for a stay of execution. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons that follow, we affirm the denial of postconviction relief, and we deny the motion for a stay of execution.

# I. BACKGROUND

Occhicone was sentenced to death for the 1986 first-degree murder of his ex-girlfriend's mother. On direct appeal, this Court recounted the facts of the case as follows:

> In the early morning hours of June 10, 1986[,] Occhicone awakened his former girlfriend by knocking on the sliding glass door to her bedroom in a house she shared with her children and her parents. The woman refused to talk with him and he left. He returned an hour or so later, armed with a handgun, and cut the telephone lines and roused the household. When the woman's father confronted him outside the house, Occhicone shot him. The woman and her daughter fled the house while Occhicone was breaking into it through a locked door. Once inside[,] Occhicone shot the woman's mother four times.

*Occhicone v. State*, 570 So. 2d 902, 904 (Fla. 1990).

Later, in a postconviction appeal, we described some of the pertinent proceedings as follows:

> At trial, Occhicone asserted a voluntary intoxication defense[,] claiming that his level of intoxication on the night of the murders, as well as his documented drinking habit, prevented him from having the requisite mental state to premeditate the murders. However, the jury found him guilty and recommended the death penalty for both murders by a seven-to-five vote.
> Although the trial judge sentenced Occhicone to life in prison for the murder of his ex-girlfriend's father, he sentenced him to death for the murder of her mother. In support of the death sentence, the trial judge found three aggravating factors: (1) previous conviction of a violent

- 2 -

felony; (2) murder committed during a burglary; and (3) murder committed in a cold, calculated, and premeditated manner.  As statutory mitigation, the trial judge found that the murder was committed while Occhicone was under the influence of extreme mental and emotional disturbance.  Finally, as nonstatutory mitigation, the judge found that Occhicone was a good prisoner and had acclimated to his custodial environment.

*Occhicone v. State*, 768 So. 2d 1037, 1039 (Fla. 2000).

This Court's affirmance of Occhicone's judgment and death sentence, *Occhicone*, 570 So. 2d at 903, became final for postconviction timing purposes in 1991, when the U.S. Supreme Court denied certiorari review.  *Occhicone v. Florida*, 500 U.S. 938 (1991); *see* Fla. R. Crim. P. 3.851(d)(1)(B) ("For the purposes of this rule, a judgment is final . . . on the disposition of the petition for writ of certiorari by the United States Supreme Court, if filed.").

In the decades since, Occhicone has unsuccessfully challenged his convictions and sentence in state and federal courts.  *See Occhicone v. Singletary*, 618 So. 2d 730, 730-31 (Fla. 1993) (denying state habeas petition); *Occhicone v. State*, 768 So. 2d at 1039 (affirming denial of initial motion for postconviction relief); *Occhicone v. State*, 235 So. 3d 299, 300 (Fla. 2018) (affirming denial of first successive motion for postconviction relief); *Occhicone v.*

*Moore*, No. 8:01CV2136T27TGW, 2005 WL 1073936, at *30 (M.D. Fla. Mar. 31, 2005) (denying federal habeas petition); *Occhicone v. Crosby*, 455 F.3d 1306, 1307 (11th Cir. 2006) (affirming denial of federal habeas relief); *Occhicone v. McDonough*, 549 U.S. 1122 (2007) (denying certiorari review of denial of federal habeas relief).

After Governor Ron DeSantis signed Occhicone's death warrant on June 26, 2026, Occhicone filed a second successive motion for postconviction relief under rule 3.851 raising three claims: (1) that recently reported shortages of etomidate, when combined with the Florida Department of Corrections' alleged failure to follow its published lethal injection procedures, violates Occhicone's rights under the Fourteenth Amendment and corresponding provisions of the Florida Constitution; (2) that Occhicone's execution violates the Eighth Amendment due to his status as an elderly person; and (3) that executing Occhicone given the number and pace of executions in Florida over the past two years would be unconstitutional under the Eighth Amendment and corresponding provisions of the Florida Constitution and would result in a manifest injustice given the unique circumstances of his case. The circuit court summarily denied all three claims, as well

as Occhicone's post-warrant request for public records and his motion for a stay of execution. This appeal followed.

## II. ANALYSIS

### A. Post-Warrant Request for Public Records

Occhicone first argues that the circuit court erred in denying his post-warrant request for public records from the Florida Department of Corrections (FDC) under rule 3.852(i).[1] Occhicone sought records concerning FDC's procurement, storage, handling, monitoring, preparation, use, disposal, and testing of etomidate; compliance with execution procedures, including consciousness checks and post-execution debriefings; and related research, expert consultations, solicitations, and communications with federal and state agencies. Occhicone asserted that the records would demonstrate that FDC has repeatedly failed to carry out executions in compliance with its own procedures and lethal injection protocol, which he alleged violates his rights to due process and equal

---

1. Although Occhicone filed his request under both subdivisions 3.852(h) and (i), and the circuit court denied the request under both subdivisions, on appeal, Occhicone only argues that the circuit court erred in denying the request under subdivision 3.852(i).

protection under the Fourteenth Amendment and corresponding provisions of the Florida Constitution. His allegation that FDC has failed to follow its own procedures and protocol relating to lethal injection stems from a heavily redacted reproduction of putative FDC lethal injection drug inventory logs that surfaced in a federal lawsuit filed by Frank Walls, who was executed in December 2025.

In his request, Occhicone also claimed that there was a current shortage of etomidate, which indicated that he was at risk of being treated differently under the law and FDC protocols from other similarly situated capital defendants under warrant, thereby violating his equal protection rights.[2] He explained that he had

---

2. Etomidate is the first drug administered under Florida's current lethal injection protocol. As to the reported etomidate shortage referenced in his public records request, Occhicone does not allege that FDC itself lacks a supply of etomidate. Rather, he argues that because a nationwide shortage exists, it is unconscionable for FDC to proceed with his execution given the dose of etomidate administered during an execution and the recent pace of executions in Florida. Occhicone did not argue below and does not argue on appeal that any authority recognizes a generally reported shortage of etomidate in clinical settings as a basis for relief under rule 3.851. He also contends that without access to the requested records, he cannot determine whether FDC intends to deviate from its protocol during his execution by using a drug other than etomidate, administering a dosage inconsistent with the protocol, or using expired etomidate. In essence, he speculates that the reported shortage will cause FDC to depart from its protocol in

concerns about the possibility of expired or soon to be expired etomidate being used in his execution and sought the requested records "just to make sure he's being treated fairly in relation to everybody else."

FDC objected to Occhicone's public records request, arguing that the requested records were confidential and statutorily exempt from disclosure; did not relate to a colorable claim for postconviction relief; and were overly broad and unduly burdensome. The circuit court denied the request, agreeing with FDC on each ground. We review the denial of public records requests for an abuse of discretion, *Muhammad v. State*, 132 So. 3d 176, 200 (Fla. 2013), and find no such abuse here.

Occhicone argues that the circuit court abused its discretion in denying his request because the records are necessary to fully

---

the future. But speculative allegations of misconduct—particularly speculative allegations that FDC may engage in *future* misconduct—do not establish a colorable claim for postconviction relief. *See, e.g.*, *Heath v. State*, 426 So. 3d 1253, 1262-63 (Fla.), *cert. denied*, No. 25-6746, 2026 WL 363902 (U.S. Feb. 10, 2026); *Trotter v. State*, 428 So. 3d 68, 72-73 (Fla.), *cert. denied*, 146 S. Ct. 755 (2026); *King v. State*, No. SC2026-0336, 2026 WL 672101, at *5-6 (Fla. Mar. 10), *cert. denied*, 146 S. Ct. 1802 (2026); *Spencer v. State*, No. SC2026-0880, 2026 WL 1757938, at *5-6 (Fla. June 18), *cert. denied*, No. 25-7648, 2026 WL 1827690 (U.S. June 25, 2026).

investigate the drugs to be used in his execution, and the circuit court's decision to prevent that investigation violates his rights to due process and equal protection under the Fourteenth Amendment by leaving him unable to develop claims based on FDC's alleged use of expired etomidate and the reported ongoing shortage of etomidate. He further contends that the denial itself violates procedural due process by constraining his ability to challenge the constitutionality of his execution. Moreover, he argues it violates his right of access to the courts under article I, section 21 of the Florida Constitution by preventing him from obtaining evidence necessary to establish his constitutional claims.

Because Occhicone failed to show that the records requested related to a colorable claim for postconviction relief, the circuit court was right to deny the request.

Occhicone argues that the plain language of the rule only requires that the records are "relevant to the subject matter" of a proceeding or "reasonably calculated to lead to the discovery of admissible evidence," not the higher burden the circuit court imposed by requiring that they relate to a colorable claim. We recently rejected both contentions in *Willacy v. State*, 431 So. 3d

254, 262 (Fla.), *cert. denied*, No. 25-7220, 2026 WL 1074143 (U.S. Apr. 21, 2026).

In *Willacy*, we explained that "we have long recognized the requirement of a nexus between the requested records and a colorable claim for postconviction relief." *Id.* (citing *Sims v. State*, 753 So. 2d 66, 70 (Fla. 2000); *Dailey v. State*, 283 So. 3d 782, 792 (Fla. 2019); *Asay v. State*, 224 So. 3d 695, 700 (Fla. 2017)). That is "because the rule 'is not intended to be a procedure authorizing a fishing expedition for records unrelated to a colorable claim for postconviction relief.'" *Id.* (quoting *Sims*, 753 So. 2d at 70).

The "colorable claim" requirement is not a judicial gloss on rule 3.852. It follows from the rule's own command that requested records be "relevant to a postconviction proceeding or reasonably calculated to lead to admissible evidence," because "the relevancy of the requested records . . . is directly measured by their connection to a colorable claim for relief." *Id.* This limitation ensures that records requests reflect "a focused investigation into some legitimate area of inquiry" rather than an eleventh-hour delay tactic. *See id.* ("Rule 3.852 is not intended for use by defendants as . . . 'nothing more than an eleventh-hour attempt to delay the

execution rather than a focused investigation into some legitimate area of inquiry.' " (omission in original) (quoting *Sims*, 753 So. 2d at 70)).

Occhicone acknowledges that he sought records to conduct "a full investigation into the drugs" that are to be used for his execution, and he argues that the circuit court's decision left him unable to form claims based on FDC's alleged use of expired etomidate and the reported ongoing shortage of etomidate. But seeking public records to conduct a "full investigation" is precisely what the colorable-claim requirement guards against. Occhicone sought to discover whether a claim might exist, rather than seeking records to support an existing claim. That is a misuse of the rule. *Id.* at 263; *Heath v. State*, 426 So. 3d 1253, 1265 (Fla.), *cert. denied*, No. 25-6746, 2026 WL 363902 (U.S. Feb. 10, 2026).

Occhicone's remaining constitutional arguments are likewise without merit. He contends that denying his public records request violated his rights to due process and equal protection under the Fourteenth Amendment, as well as his right of access to the courts under article I, section 21 of the Florida Constitution. Those arguments all depend on the flawed premise that rule 3.852 entitled

him to the requested records. And, as we explained in *Hitchcock v. State*, 431 So. 3d 514, 523 (Fla.), *cert. denied*, No. 25-7255, 2026 WL 1170862 (U.S. Apr. 30, 2026), "no constitutional right exists to discover grievances or to litigate effectively once in court." The circuit court's denial of Occhicone's records request did not violate his constitutional rights. *See King v. State*, No. SC2026-0336, 2026 WL 672101, at *6 (Fla. Mar. 10) (rejecting a claim that the denial of a post-warrant public records demand violated due process and explaining that the Court has "previously rejected efforts to morph a challenge to the denial of a public records demand into a constitutional challenge"), *cert. denied*, 146 S. Ct. 1802 (2026); *Randolph v. State*, 422 So. 3d 166, 172 (Fla.) (collecting cases rejecting constitutional challenges premised on the denial of postconviction public records requests), *cert. denied*, 146 S. Ct. 819 (2025).

## B. Claim That Occhicone's Execution Violates His Right to Equal Protection

To the extent Occhicone also challenges the summary denial of the first claim in his successive motion independent of the denial of his public records request, we affirm. The gist of Occhicone's claim

appears to be that, given the alleged nationwide shortage of etomidate and FDC's alleged past deviations from its own execution protocols, FDC will deviate from the protocols in Occhicone's case and thereby violate his right to equal protection. There are several reasons why the circuit court was right to deny this claim.

First, Occhicone's claim that he is entitled to relief based on the possibility that FDC will deviate from its lethal injection protocol is speculative and foreclosed by this Court's recent decisions addressing materially similar claims. *See, e.g., Heath*, 426 So. 3d at 1261-63; *Trotter v. State*, 428 So. 3d 68, 72-76 (Fla.), *cert. denied*, 146 S. Ct. 755 (2026); *King*, 2026 WL 672101, at *4-6; *Spencer v. State*, No. SC2026-0880, 2026 WL 1757938, at *4-6 (Fla. June 18), *cert. denied*, No. 25-7648, 2026 WL 1827690 (U.S. June 25, 2026).

Second, Occhicone's equal protection claim is not based on any claimed membership in a suspect class, and he cannot prevail under a "class of one" theory. Such claims are available only "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This test reflects the

constitution's protection against "intentional and arbitrary discrimination." *Id.* (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 445 (1923)). Occhicone does not allege that he will be the victim of intentional discrimination.

Finally, there is Occhicone's argument that "his equal protection rights will be violated by the use of extremely expired etomidate during his execution." Aside from being speculative, this allegation neither identifies any disparate treatment nor alleges that a deviation from the protocol would subject him to a "substantial and imminent" risk of "severe pain" in violation of the Eighth Amendment. *Glossip v. Gross*, 576 U.S. 863, 878 (2015).

We find no error in the circuit court's denial of Occhicone's equal protection claim.

## C. Claim That Occhicone's Execution Violates the Eighth Amendment Due to His Status as an Elderly Person

Occhicone next argues that the circuit court erred in denying his claim that his execution would constitute cruel and unusual punishment under the Eighth Amendment and corresponding provisions of the Florida Constitution because of his status as an elderly person. Occhicone insists that he is not seeking a

categorical bar based on old age. Instead, he argues that his execution would constitute cruel and unusual punishment because of the "totality of the circumstances." Occhicone points to his history of substance abuse; sleep deprivation on death row; poor hearing and vision; cardiac issues; kidney disease; an enlarged prostate; and the general physical deterioration associated with advanced age. We find no error in the circuit court's denial of this claim, which is untimely and in any event lacks merit.

### 1. The Claim is Untimely

Occhicone has not established that this claim is timely. Rule 3.851 limits the filing of a motion for postconviction relief to within one year of the date the defendant's conviction and sentence became final, unless the motion alleges one of the following exceptions set forth in subdivision (d)(2):

> (A) the facts on which the claim is predicated were unknown to the movant or the movant's attorney and could not have been ascertained by the exercise of due diligence, or

> (B) the fundamental constitutional right asserted was not established within the period provided for in subdivision (d)(1) and has been held to apply retroactively, or

> (C) postconviction counsel, through neglect, failed to file the motion.

And any claim based on facts that were previously unknown must still be brought within one year of the date that the factual basis for the claim became discoverable. *Heath*, 426 So. 3d at 1267.

Occhicone's judgment and sentence became final thirty-five years ago, and he has not alleged that any of these exceptions to the one-year time limit apply to this claim. Nor did he allege that any of the circumstances underlying his claim that he is "so elderly and vulnerable" that his execution would violate the Eighth Amendment arose or became known to him only within the last year. *See Spencer*, 2026 WL 1757938, at *6 (observing that a seventy-four-year-old defendant under an active death warrant identified no meaningful circumstances arising within the year preceding a successive postconviction claim and that the mere progression from one year in age to the next does not create a new factual predicate every year under rule 3.851). Thus, Occhicone's claim that he is too old to be executed based on his individual circumstances is untimely.

## 2. The Claim Lacks Merit

Even if this claim were timely, it would fail on the merits. We are unpersuaded by Occhicone's attempt to avoid our recent

decisions in *Smithers v. State*, 420 So. 3d 460 (Fla.), *cert. denied*, 146 S. Ct. 323 (2025), *Trotter*, 428 So. 3d 68, and *Spencer*, 2026 WL 1757938. In those cases, we rejected claims seeking a categorical exemption from execution based on the defendant's advanced age. *Smithers*, 420 So. 3d at 465-66; *Trotter*, 428 So. 3d at 73-74; *Spencer*, 2026 WL 1757938, at *6-7.

Whether Occhicone seeks a categorical or as-applied exemption based on his advanced age is a distinction without a difference. Either way, he asks this Court to recognize an age-based exemption that the U.S. Supreme Court has never recognized. The conformity clause of article I, section 17 of the Florida Constitution precludes that. It provides that "[t]he prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution." This means that the Supreme Court's interpretation of the Eighth Amendment sets both the floor and the ceiling for protection from cruel and unusual punishment in

Florida. *Barwick v. State*, 361 So. 3d 785, 794 (Fla. 2023). Occhicone has identified no authority that would allow our Court to vacate his death sentence based on the combination of his age and the litany of infirmities from which he allegedly suffers. That plea sounds in clemency, which of course is the province of the executive branch.

Finally, we note Occhicone's argument that the passage of forty years has drained his execution of any deterrent value. In our view, this is merely a variation of the assertion that a prolonged stay on death row renders an execution unconstitutional. That is another claim this Court has already rejected. *See, e.g.*, *Dillbeck v. State*, 357 So. 3d 94, 103 (Fla. 2023) (rejecting as "facially invalid" the claim that executing a defendant after more than thirty years on death row violates the Eighth Amendment).

## D. Claim Based on the Number and Pace of Executions in Florida

In his final issue on appeal, Occhicone argues that the circuit court erred in summarily denying his claim that his execution would violate the Eighth Amendment and result in a manifest injustice due to the number and pace of executions in Florida over

the past two years and the unique circumstances of his case. Occhicone advances three distinct theories in support of this claim: (1) that the number and pace of executions in Florida over the past two years have inflicted psychological and emotional harm on the correctional staff at Florida State Prison, such that carrying out his execution would be cruel and unusual; (2) that his advanced age, Catholic faith, Italian heritage, and the opposition of religious leaders and members of the community to the death penalty in his case render his execution a manifest injustice; and (3) that his death sentence is unconstitutional and manifestly unjust because it was imposed based on a seven-to-five jury recommendation that would be insufficient under the current version of section 921.141, Florida Statutes. Occhicone is not entitled to relief under any of these theories.

1. *The Rate and Pace of Executions Do Not Violate Occhicone's Eighth Amendment Rights or Result in a Manifest Injustice*

Purporting to assert a claim on his own behalf and on behalf of prison staff, Occhicone contends that the rate and pace of executions in 2025 and 2026 have traumatized and are "wrecking" the mental health of the staff at Florida State Prison. He claims

that it is cruel and emotionally damaging to make him watch the prison staff, with whom he has developed close relationships, carry the emotional burden of an execution. Occhicone seeks relief in the form of a six-month moratorium on executions to allow experts to study the effect of the recent executions on prison staff. Such relief is unavailable under rule 3.851, which is a vehicle for seeking vacatur of a conviction or sentence of death.

To the extent Occhicone raises an Eighth Amendment claim, it fails on the merits. Occhicone has identified no authority recognizing an Eighth Amendment injury premised on a prisoner's exposure to the suffering of others. Nor does he identify any legal support for his assertion that, due to his own Catholic faith and certain community members' opposition to the death penalty in his case, executing him would constitute a manifest injustice.

### 2. Occhicone's Execution Will Not Violate the Eighth Amendment or Create a Manifest Injustice Despite the Seven-to-Five Death Recommendation

Under current Florida law, the imposition of a death sentence requires the recommendation of at least eight penalty-phase jurors. § 921.141(2)(c), Fla. Stat. (2026). Occhicone argues that executing him based on the seven-to-five death recommendation in his case

- 19 -

would therefore violate the Eighth Amendment and constitute a manifest injustice.[3]  The circuit court was right to deny this claim.

The claim is untimely, because the current version of Florida's death penalty statute has been in effect since 2023, several years before Occhicone filed the instant motion under rule 3.851. Moreover, changes in our state's death penalty law and jurisprudence mean that death row inmates will not all have been sentenced under identical procedures.  That variation does not render Occhicone's death sentence a manifest injustice.

## III.  CONCLUSION

For the reasons stated above, we affirm the circuit court's order summarily denying Occhicone's second successive motion for postconviction relief, and we deny his motion for a stay of execution.

No motion for rehearing will be entertained by this Court.  The

---

3.  Occhicone maintains that this claim is distinct from one brought under *Hurst v. Florida*, 577 U.S. 92 (2016), or *Hurst v. State*, 202 So. 3d 40 (Fla. 2016).  To the extent that this claim could be construed as a *Hurst* claim, Occhicone previously sought relief under *Hurst* in his first successive motion for postconviction relief, and we rejected that claim on appeal.  *Occhicone*, 235 So. 3d at 300.

mandate shall issue immediately.

It is so ordered.

COURIEL, C.J., and MUÑIZ, GROSSHANS, FRANCIS, SASSO, and
TANENBAUM, JJ., concur.
LABARGA, J., concurs in result.

An Appeal from the Circuit Court in and for Pasco County,
   Pat Siracusa, Jr., Judge – Case No. 511986CF001355CFAXWS

Eric Pinkard, Capital Collateral Regional Counsel, Ali A. Shakoor,
Assistant Capital Collateral Regional Counsel, Debra Roganne Bell,
Assistant Capital Collateral Regional Counsel, and Mahham Syed,
Assistant Capital Collateral Regional Counsel, Middle Region,
Temple Terrace, Florida,

   for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida, Rick A.
Buchwalter, Senior Assistant Attorney General, Suzanne Glickman,
Senior Assistant Attorney General, and Michael W. Mervine, Special
Counsel, Assistant Attorney General, Tampa, Florida,

   for Appellee